IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> $2,760 IN U.S. CURRENCY, ) <br> MORE OR LESS, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 4:23-cv-375 <br><br> VERIFIED COMPLAINT FOR <br> FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property ("Defendant Property") to the use and benefit of the United States of America ("Plaintiff") for its involvement, as set forth below, in violations of 21 U.S.C. § 846 (Attempt and conspiracy) § 841(a)(1)(Prohibited acts), and § 843(b) (Prohibited acts C).

2. The United States believes the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and as proceeds traceable to such an exchange, and as money used or intended to be used to facilitate any violation of said subchapter.

3. It is believed that evidence will show or will after a reasonable opportunity for further investigation and discovery, that the Defendant Property constitutes the proceeds of a prohibited controlled substance offense or was used or intended to be used to facilitate a prohibited controlled substance offense.

## II. DEFENDANT IN REM

4. The Defendant Property is generally described as approximately $2,760 in U.S. currency seized on or about December 3, 2021, in Gilbert, Story County, Iowa as discussed more fully below (the "Defendant Property"). The Defendant Property is in the custody of law enforcement.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

6. This Court has in rem jurisdiction and venue over the Defendant Property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this District.

## IV. FACTS

7. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. § 801-904).

8. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A)-(C).

10. Marijuana is a Schedule I controlled substance.

11. Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, but use of a Schedule II controlled substance may lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2)(A)-(C).

12. Methamphetamine is a Schedule II controlled substance.

13. Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

14. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

15. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

16. Under the Controlled Substances Act, it is unlawful to knowingly rent, use, or maintain any place for the purpose of distributing any controlled substance, and to manage or control a place and make it available for use for the purpose of unlawfully distributing a controlled substance. 21 U.S.C. § 856.

17. Under the Controlled Substances Act, all moneys or things of value furnished or intended to be furnished by any person in an illegal exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Subchapter I of the Controlled Substances Act, are subject to forfeiture to the United States and no property right shall exist in such property.

18. None of the persons connected to the Defendant currency are authorized by law to dispense, distribute, or possess controlled substances, specifically marijuana or methamphetamine.

19. Beginning by at least December 2021, David Edward Chioino ("Chioino") and others known and unknown conspired in the Southern District of Iowa and elsewhere to illegally distribute marijuana and methamphetamine, in violation of federal law.

20. The conspiracy obtained the marijuana and methamphetamine it illegally distributed from other states, including, but not necessarily limited to, California.

21. It was an objective of the conspiracy to sell the marijuana and methamphetamine at a profit to one or more members of the conspiracy.

22. Drug traffickers typically require payment in, and keep their profits in, cash, in order to try and prevent their illegal activities from being detected by financial institutions and law enforcement.

23. Drug traffickers often store the profits or proceeds they derive from drug dealing in what they believe to be a safe location, such as their residence or the residence of a person they trust, or even in a safe.

24. On December 2, 2021, law enforcement officers in Boone County, Iowa learned Chioino received a package in the mail in the Southern District of Iowa containing approximately four pounds of methamphetamine, wrapped in individual pound packages.

25. The package was delivered to the house of Chioino's Accomplice ("Accomplice # 1"), who was to receive one ounce of methamphetamine plus $120 for receiving the package.

26. Chioino and Accomplice # 1 had been selling methamphetamine together for the past year.

27. Law enforcement executed a state search warrant at the residence of Accomplice # 1 on December 3, 2021.

28. The search confirmed Accomplice # 1's involvement with drug dealing, as law enforcement located materials used in drug dealing, including several scales, packaging materials, and drug paraphernalia.

29. Later, Accomplice # 1 advised where law enforcement might find the remainder of the methamphetamine, and a distribution quantity of methamphetamine was located where he described it would be.

30. Accomplice # 1 and Chioino used text messages, among other means, to communicate about their drug dealing.

31. Also on December 3, 2021, law enforcement officers executed a search warrant at Chioino's then-residence in Gilbert, Iowa.

32. The residence was owned by Accomplice # 2, who also lived there with his wife.

33. During the search of the residence, law enforcement located vacuum sealing equipment, used to package illegal drugs, drug packaging material, scales used to weigh illegal drugs (with drug residue on them), marijuana, and $2,760 in U.S. Currency (the Defendant Property).

34. Accomplice # 2 acknowledged he knew Chioino was receiving packages from California that contained marijuana and methamphetamine.

35. Accomplice # 2 stated he purchased marijuana from Chioino for $3,200 per pound. He paid Chioino upfront for the marijuana, and Chioino would have it mailed to Iowa from California.

36. The $2,760 was found in a safe in Accomplice # 2's bedroom.

37. Accomplice # 2 stated that the $2,760 in U.S. Currency was to be used to purchase more marijuana from Chioino.

38. Accomplice # 2 said he would purchase marijuana from Chioino, illegally sell it for a profit, and then use the profit, at least in part, to buy more marijuana from Chioino.

39. Accomplice # 2, thus, stated the $2,700 was both drug proceeds and money intended to be used to facilitate drug dealing.

40. Given that drug dealers often store their cash sale proceeds with persons they trust, the evidence suggests that the Defendant Property may be, in whole or in part, proceeds from the sale of methamphetamine, as well.

41. Accomplice # 2 stated he sold the marijuana after he purchased it from Chioino and used the profits to purchase more marijuana for resale.

42. Accomplice # 2 had a packaging and vacuum sealing operation set up in an outbuilding on the real property.

43. On September 22, 2022, a grand jury returned a three-count Indictment charging David Edward Chioino with two crimes, Conspiracy to Distribute a Controlled Substance, in violation to Title 21 United States Code, Sections 846 and 841(b)(1)(A) (Count 1); Possession with Intent to Distribute a Controlled Substance, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(A) (Count 2). *See, United States v. David Edward Chioino*, Crim. No. 4:22-CR-00135 (S.D. Iowa). The Indictment also contained a notice that the government intended to try and forfeited the seized $2,760 from Chioino.

44. On March 28, 2023, pursuant to a plea agreement with the Government, Chioino pled guilty and admitted he knowingly conspired to distribute

methamphetamine between at least December 3, 2021, and continuing through approximately February 24, 2022. The parties reached no agreement on the forfeiture of the Defendant $2,760.

45. During the criminal case, Chioino disclaimed any interest in the Defendant $2,760.

46. On July 28, 2023, Chioino was sentenced to 180 months imprisonment, with a five-year term of supervised release to follow.

47. The evidence in this case tends to prove the Defendant Property is both proceeds from the illegal sale of a controlled substance, either marijuana or methamphetamine or both, and was money intended to be used to facilitate illegal drug dealing of marijuana or methamphetamine, in violation of the Controlled Substances Act.

## V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

48. Plaintiff repeats and realleges each and every allegation set forth above.

49. The United States has reason to believe the Defendant Property constitutes money or another thing of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, § 846, § 856 et seq.

50. As a result of the foregoing, the Defendant Property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the Plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant Property, that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant Property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

    Respectfully submitted,

    Richard D. Westphal
    United States Attorney

    By: */Craig Peyton Gaumer*
    Craig Peyton Gaumer
    Assistant United States Attorney
    U. S. Courthouse Annex,
    Suite 286
    110 East Court Avenue
    Des Moines, Iowa 50309
    Tel: (515) 473-9300
    Fax: (515) 473-9292
    Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Seth McCrea, hereby verify and declare under penalty of perjury that I am a Detective with the Boone County Sheriff's Office and that I have read the foregoing Verified Complaint *in Rem*, and know the contents thereof. The matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the information provided to me by other law enforcement officers, as well as my investigation of this case.

Dated: September 10, 2023.

*Seth McCrea* (signature)
Seth McCrea, Detective
Boone County, Iowa Sheriff's Department